United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANDRA RAMIREZ,

        Plaintiff,

  v.

JAMES SPELTZ, GRACE NAYLOR,
AVALONBAY COMMUNITIES, INC.,
and DOES 1–50,

        Defendant.

_____/

No. C 15-03538 WHA

**ORDER REMANDING
ACTION TO STATE COURT**

### INTRODUCTION

In this workplace-harassment action, plaintiff has sued her former employer and two employees. The action was removed from state court although the parties are not completely diverse, based on the theory that the employees were fraudulently joined. The employees now move to dismiss all claims against them. For the reasons stated below, the case is **REMANDED** to Contra Costa Superior Court and defendants' motion to dismiss is **DENIED AS MOOT**.

### STATEMENT

**1.    PROCEDURAL HISTORY.**

This is a follow-on action to a lawsuit previously reduced to judgment. Prior to commencing this action, plaintiff Sandra Ramirez sued her employer, AvalonBay Communities, Inc., (also a defendant here) in state court, asserting claims for discrimination, harassment, and tortious discharge. That case was removed to federal court here in San Francisco on the basis of diversity. *Ramirez v. AvalonBay Communities, Inc.*, No. 14-4211 (N.D. Cal.). Ramirez is a

**United States District Court**
For the Northern District of California

1    citizen of California, AvalonBay is incorporated in Maryland and has its principal place of

2    business in Virginia.

3          Nearly six months after the deadline to seek leave to add new parties and just three weeks

4    before the close of discovery, Ramirez moved to voluntarily dismiss that case without prejudice.

5    Ramirez wanted to join two employees of AvalonBay — general manager James Speltz and

6    human resources director Grace Naylor — as defendants, but (wrongly) believed that joining

7    those individuals (both California citizens), would deprive the court of subject-matter

8    jurisdiction.  She also feared that the limitations period would bar claims against Speltz and

9    Naylor.  The day *before* she moved to dismiss her first case, Ramirez commenced this action

10   against Speltz and Ramirez in state court.

11         Ramirez's motion for voluntary dismissal of her first case was denied.  AvalonBay then

12   moved for summary judgment, which was granted.  While that motion was pending, this action

13   was removed to federal court, on the basis that Speltz and Naylor were fraudulently joined, and

14   the remaining parties were completely diverse.  This action was then related to Ramirez's first

15   action.  Speltz and Naylor now move to dismiss all claims against them.

16         **2.    FACTUAL BACKGROUND.**

17         From 2010 to 2014, plaintiff Sandra Ramirez, a lesbian, worked as a leasing agent with

18   defendant AvalonBay Communities, Inc., a firm that developed, redeveloped, and managed

19   apartment communities.  At first, Ramirez worked at a property in Dublin, California.  One of

20   Ramirez's duties was to conduct tours of the property for prospective residents.  She received

21   commissions from successful sales of apartment units to those prospective residents.  In 2012,

22   Ramirez fell while on the job, and injured her knee.  She was placed on modified duty, which

23   limited her to conducting three tours a day.

24         In 2013, AvalonBay sold the Dublin property, and transferred Ramirez to a new property

25   called Walnut Creek.  Soon after Ramirez started at Walnut Creek, defendant James Speltz took

26   over as general manager for that property.  Ramirez alleges that "from the time Mr. Speltz

27   arrived, his attitude towards [her] was negative and aggressive and [he] maintained a bully type

28   of management when it came to her" (Amd. Compl. ¶ 13).

2

In August 2013, Speltz reassigned Ramirez to work in the back office where she could not conduct tours, because "she was unable to give 'good customer service,' with her disability" (*id.* ¶ 17). This reassignment negatively affected her commissions. Ramirez asked her doctor to put her back on full duty on a temporary basis, which was granted (*id.* ¶ 19). Ramirez continued to be subject to a series of written disciplinary actions and negative performance reviews issued by Speltz, for her contributions to team activities, for having her girlfriend visit the office, and for refusing to conduct a tour that Ramirez believed violated fair housing law. Those write-ups were approved by Naylor (*id.* ¶¶ 24–25, 31).

Ramirez scheduled a meeting with Naylor, the human resources director, to discuss her concerns about how Speltz was treating her. Naylor informed Ramirez during that meeting that she would have to leave in order to get to a personal appointment, which Ramirez felt was dismissive. Naylor did not re-schedule another meeting with Ramirez (*id.* ¶¶ 28–30).

Ramirez was ultimately terminated from her position at AvalonBay (*id.* ¶ 33).

Ramirez now brings claims against both Speltz and Naylor for harassment on the basis of sexual orientation, against Speltz only for harassment on the basis of disability, and against AvalonBay for retaliation. Speltz and Naylor now move to dismiss Ramirez's harassment. Attached to her opposition to this motion, Ramirez filed a proposed second amended complaint (Pl.'s Opp., Exh. 1). The proposed second amended complaint alleges a single harassment claim against both Speltz and Naylor, on the basis of both sexual orientation and disability along with a retaliation claim against AvalonBay. Ramirez has not moved to remand this action, however, federal subject-matter jurisdiction only exists if Speltz and Naylor were fraudulently joined. This order follows full briefing and oral argument.

**ANALYSIS**

Ramirez, Speltz, and Naylor are all citizens of California, but defendants argue that removal to federal court was proper because Speltz and Naylor were fraudulently joined, and the remaining parties were diverse. Speltz and Naylor argue that Ramirez has failed to state a claim against them, which they contend is sufficient to establish fraudulent joinder.

1      "If a plaintiff fails to state a cause of action against a resident defendant, and the failure

2   is obvious according to the settled rules of the state, the joinder of the resident defendant is

3   fraudulent," and the fraudulently joined defendants' citizenship may be disregarded for removal

4   purposes. *McCabe v. General Food Corp.*, 811 F.2d 1335, 1339 (9th Cir. 1987).  "Federal

5   jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."

6   *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

7          Our court of appeals has not offered a standard to determine whether a failure to state a

8   claim is sufficiently "obvious according to the settled rules of the state," to establish fraudulent

9   joinder.  Every district court in our circuit to address the question has found that "some room

10  must exist between the standard for dismissal under Rule 12(b)(6), for example, and a finding of

11  fraudulent joinder."  *Davis v. Prentiss Properties Ltd., Inc.*, 66 F. Supp. 2d 1112, 1115 (C.D.

12  Cal. 1999) (Judge Harry Pregerson).  A mere "glimmer of hope" that the plaintiff could establish

13  a claim is sufficient to defeat removal on the basis of fraudulent joinder.  *Segura v. Allstate*

14  *Insurance Co.*, No 13-5594, 2014 WL 394657, at *4 (N.D. Cal. Aug. 11, 2014) (Judge Yvonne

15  Gonzalez Rogers).  Numerous decisions have specifically held that removal on the basis of

16  fraudulent joinder is inappropriate unless the defendant can show that the plaintiff "would not be

17  afforded leave to amend his complaint to cure [the] purported deficiency."  *Nickelberry v.*

18  *DaimlerChrysler Corp.*, No. 06-1002, 2006 WL 728200 (N.D. Cal. Apr. 17, 2006) (Judge

19  Maxine Chesney); *see also Pooshs v. Altria Group, Inc.*, 331 F. Supp. 2d 1089, 1096 (N.D. Cal.

20  2004) (Judge Phyllis J. Hamilton).  These decisions all require the district court to "walk a very

21  fine line:  it must consider the merits of the matter without assuming jurisdiction over it."  *Davis*,

22  66 F. Supp. 2d at 1114.

23          In the absence of binding authority and with the benefit of persuasive authority, this order

24  follows the trend of district courts in our circuit and finds a defendant cannot be held

25  fraudulently joined simply on the basis that the plaintiff's claim could not survive a motion to

26  dismiss.  Rather, a finding of fraudulent joinder requires a showing that the plaintiff could not

27  plead any facts sufficient to state a claim against those defendants, such that leave to amend

28  would be futile. Speltz and Naylor have failed to carry that burden.

United States District Court

For the Northern District of California

1    Ramirez's complaint alleges that Speltz's and Naylor's respective conduct constituted

2  harassment within the California Fair Employment and Housing Act.  Unlike a discrimination

3  claim, for which only an employer may be liable, an individual employee may be liable for

4  workplace harassment (in addition to an employer).  *Compare* Cal. Gov. Code § 12940(a) *with*

5  § 12940(j)(1).  To plead a claim for harassment, Ramirez must "demonstrate that the conduct

6  complained of was *severe enough or sufficiently pervasive* to alter the conditions of employment

7  and create a work environment that qualifies as hostile or abusive" because of her protected

8  status.  *Lyle v. Warner Bros. Television Products*, 38 Cal. 4th 264, 283 (2006) (emphasis in

9  original).  A harassment claim specifically focuses on hostility and changed conditions in the

10  *social environment* of the workplace, as opposed to the *explicit* terms and conditions of

11  employment, which are the subject of discrimination claims.  *Roby v. McKesson Corp.*, 47 Cal.

12  4th 686, 708–09 (2009).

13    Recognizing that distinction, the California Supreme Court, in *Reno v. Baird*, 18 Cal. 4th

14  640, 646–47 (1998), established that personnel-management actions, such as work assignments,

15  performance evaluations, or firing, cannot, themselves, establish a claim for harassment:

16    We conclude, therefore, that the Legislature intended that
   commonly necessary personnel management actions such as hiring
17    and firing, job or project assignments, office or work station
   assignments, promotion or demotion, performance evaluations, the
18    provision of support, the assignment or nonassignment of
   supervisory functions, deciding who will and who will not attend
19    meetings, deciding who will be laid off, and the like, do not come
   within the meaning of harassment.  These are the actions of a type
20    necessary to carry out the duties of business and personnel
   management.  These actions may retrospectively be found
21    discriminatory if based on improper motives, but in that event the
   remedies provided by FEHA are those for discrimination, not
22    harassment.  Harassment, by contrast, consists of actions outside
   the scope of job duties which are not of a type necessary to do
23    business and personnel management.  This significant distinction
   underlies the differential treatment of harassment and
24    discrimination in the FEHA.

25  A contrary holding would chill a supervisor's ability to perform his job responsibilities,

26  inasmuch as a supervisor cannot insulate himself from personal liability exposure by refraining

27  from performing essential job functions, although he can insulate himself by declining to use

28

1  slurs, derogatory drawings, or engaging in other offensive conduct unrelated to job duties. *Id.* at

2  646.

3       Every allegation in Ramirez's first amended complaint relates to a personnel-

4  management decision.  Ramirez's allegations against Speltz pertain to disciplinary actions,

5  work-station assignments, and termination.  Ramirez's allegations against Naylor pertain directly

6  to her performance of her duties providing support to Ramirez in her capacity as the human

7  resources director and her approval of the performance evaluations issued by Speltz.  Thus,

8  defendants argue that Ramirez has failed to plead any factual basis for a claim of harassment.

9       Indeed, even if Ramirez's allegations that Speltz and Naylor performed their job duties

10 with discriminatory animus are credited, there is still no basis in Ramirez's first amended

11 complaint from which one could infer that either defendant created a social environment so

12 severely hostile as to change the conditions of Ramirez's employment, apart from the explicit

13 changes that resulted from personnel-management actions.  Those allegations sound in

14 discrimination and may not be brought against Speltz or Naylor as individuals.

15      In her opposition to this motion, Ramirez argues that her allegations were not just about

16 personnel-management actions, but also about the way defendants "communicated and engaged

17 with" her (Pl.'s Opp. at 4).  Ramirez has filed a proposed second amended complaint.  That

18 proposed complaint offers specific details about each of the personnel-management decisions in

19 Ramirez's first amended complaint, along with new examples of allegedly-discriminatory

20 personnel-management decisions.

21      The proposed second amended complaint includes allegations that Speltz and Naylor

22 spoke to her in a different tone from how they spoke to other employees (*id.*, Exh. 1 ¶ 13, 61).

23 Ramirez also alleges that "she walked on eggshells around Mr. Speltz . . . trying not to do

24 anything to upset him," although she offers no specific examples of "walking on eggshells" (*id.* ¶

25 23).  Those allegations *could* support a claim for hostile work environment, but as proposed they

26 are conclusory and not entitled to credence on a motion to dismiss.  Defendants face a higher

27 burden here.  They must show that Speltz and Naylor were *fraudulently joined*, not merely that

28 Ramirez has failed to state a claim against them.  Defendants have not shown us that we can

United States District Court
For the Northern District of California

1  safely rule out the possibility that Ramirez could allege specific facts that would support a claim

2  for harassment, if given leave to amend.  The fact that her proposed second amended complaint

3  lacks such allegations is unavailing.

4      Accordingly, Speltz and Naylor have failed to carry the burden that they were

5  fraudulently joined, and their citizenship must be considered.  As Ramirez, Speltz, and Naylor

6  are all California citizens, there is not complete diversity.  This Court lacks subject-matter

7  jurisdiction.

8                              **CONCLUSION**

9      For the reasons stated above, this case is hereby **REMANDED** to Contra Costa Superior

10  Court.  This is without prejudice to a future removal in the event the state court eventually

11  dismisses the individual defendants.  Defendants' motion to dismiss is **DENIED AS MOOT**.

12

13      **IT IS SO ORDERED.**

14

15  Dated:   October 8, 2015.

16                                      WILLIAM ALSUP
                                        UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

7